**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOE HILLARD                                              :        CIVIL ACTION

             Plaintiff                              :

             v.                                     :        NO. 08-cv-4375

SCHOOL DISTRICT OF PHILADELPHIA,  :
DR. DONALD DONLEY, PRINCIPAL,
AND VICE PRINCIPAL TOM DOUGHERTY

             Defendants                          :

## ORDER

      And now, this                    day of                              , 2009, upon

consideration of the Motion for Summary Judgment filed on behalf of Defendants School

District of Philadelphia, Donald Donley and Tom Dougherty, and any response thereto, it

is hereby ORDERED that Defendants' Motion is GRANTED. All claims against

Defendants are dismissed with prejudice. Judgment is entered in favor of the defendants

and against Plaintiff.

                                BY THE COURT:

                                _____

                                HONORABLE MITCHELL S. GOLDBERG

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOE HILLARD                                        :        CIVIL ACTION

                   Plaintiff                       :

                   v.                              :        NO. 08-cv-4375

SCHOOL DISTRICT OF PHILADELPHIA,  :
DR. DONALD DONLEY, PRINCIPAL,
AND VICE PRINCIPAL TOM DOUGHERTY

                   Defendants                      :

---

**MOTION FOR SUMMARY JUDGMENT ON BEHALF OF**
**THE SCHOOL DISTRICT OF PHILADELPHIA, DR. DONALD DONLEY AND**
**VICE PRINCIPAL TOM DOUGHERTY**

---

Defendants School District of Philadelphia, Dr. Donald Donley and Vice

Principal Tom Dougherty, by their undersigned counsel, hereby file this Motion for

Summary Judgment.

For the reasons set forth in the attached Memorandum of Law, which is

incorporated herein by reference, Defendants respectfully request that this Honorable

Court dismiss all claims against them as set forth in Plaintiff's Complaint and enter

judgment in their favor as a matter of law.

                                        Respectfully submitted,

                                        Diane Bernoff Sher
                                        Assistant General Counsel

Date:    October 2, 2009

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOE HILLARD : CIVIL ACTION

              Plaintiff :

        v. : NO. 08-cv-4375

SCHOOL DISTRICT OF PHILADELPHIA, :
DR. DONALD DONLEY, PRINCIPAL,
AND VICE PRINCIPAL TOM DOUGHERTY

           Defendants :

---

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

---

1.      On September 13, 2006, Dr. Donald C. Donley ("Donley") was employed by the School District of Philadelphia as the principal of Lincoln High School. (Complaint[1], Docket No.1, ¶2; July 16, 2009 Deposition Testimony of Donald Charles Donley[2], p. 8).

2.      On September 13, 2006, Thomas Dougherty ("Dougherty") was employed by the School District of Philadelphia as the vice principal of Lincoln High School. (Ex. A, ¶3; Deposition Testimony of Thomas Dougherty[3], p. 6).

---

[1] A true copy of Plaintiff's Complaint is attached to Defendants' Motion for Summary Judgment as Exhibit A.

[2] A true copy of the identified portions of Dr. Donald C. Donley's July 16, 2009 Deposition Transcript is attached to Defendants' Motion for Summary Judgment as Exhibit C.

[3] A true copy of the identified portions of Thomas Dougherty's June 1, 2009 Deposition Transcript is attached to Defendants' Motion for Summary Judgment as Exhibit D.

3.     Although the Complaint identifies as defendants "School Police Officers John Doe #1-7," the plaintiff never identified the School Police officers whom he believes committed the acts complained of, he never substituted the names of the School Police Officers for the "John Doe" defendants, and he has never served any School Police Officers with the Complaint. Ex. A ¶ 7-8; Civil Docket for Case #: 2:08-cv-04375-MSG.[4]

4.     The only defendants in the within matter who have been identified and served with the Complaint are the School District of Philadelphia, Donley and Dougherty. (Ex. G.)

5.     On September 13, 2006, Donley and Dougherty were responsible for security and safety inside of Lincoln High School, with Dougherty responsible to oversee school security. (Ex. C, 8-9).

6.     At the time of the incident complained of, Plaintiff Joe Hilliard ("Hilliard") was an independent contractor deliveryman working through an entity known as Velocity Express. June 1, 2009 Deposition Testimony of Plaintiff Joe Hilliard[5], p. 10)

7.     At the time of the incident on September 13, 2006, Hilliard was wearing a black polo shirt with the word "Velocity" above a pocket on the left side; underneath the word "Velocity" appeared the words "Time Critical Logistics." (Ex. B, 99).

8.     Hilliard had gone to Lincoln High School on September 13, 2006 to make a delivery of office supplies and to pick up items that the school was returning to the vendor. (Ex. A, ¶ 13, Ex. B, 52)

---

[4] A true copy of the Civil Docket for Case #: 2:08-cv-04375-MSG, current through the date of the filing of the within Motion, is attached to Defendants' Motion for Summary Judgment as Exhibit G.

[5] A true copy of the identified portions of Joe Hilliard's June 1, 2009 Deposition Transcript is attached to Defendants' Motion for Summary Judgment as Exhibit B.

9.      Plaintiff was familiar with the fact that at Lincoln High School, deliveries and pick-ups normally took place at the loading dock area in the rear of the school. (Ex. B, 51, 54 – 55)

10.     On September 13, 2006, when plaintiff reported to the rear loading dock area, he was told that the items to be returned were located in the school office. (Ex. B, 56 – 57)

11.     Plaintiff went to the school office, where the school principal, Donley, asked plaintiff if he would bring his truck to the front of the building and to remove the boxes from the school office, which plaintiff agreed to do. (Ex. B, 63)

12.     After plaintiff brought his truck to the front of the building, he realized he had left his "hand dolly" back at the loading dock, and he walked through the hallways of the school in order to retrieve it.  (Ex. B, 64 – 66).

13.     As he walked through the building, Hilliard was aware that school was in session, and that students were in the classrooms. (Ex. B, 52, 60 – 61, 74).

14.     Plaintiff was not wearing a visitor's badge, and he did not have any form of identification with him as he walked through the school; plaintiff's identification was in his truck. (Ex. B, 81, 87, 93).

15.     Hilliard admits that as he was walking through the hallways of the school, he came upon Vice Principal Dougherty. Dougherty did not know plaintiff or why plaintiff was in the school. Dougherty approached plaintiff and asked, "Hey, how are you doing? Can I help you?" Plaintiff replied that he did not need any help, and he continued walking through the school. (Ex. B, 66 - 67, 72; Ex. D, 21, 25).

3

16.     Dougherty followed plaintiff, who continued walking through the building. Plaintiff admits that Dougherty asked plaintiff what he was doing, and that plaintiff replied, "I'm just working." Hilliard admitted that he did not stop, that he continued to walk through the building, and that he did not stop and explain what he meant by "working," even though he knew that Dougherty was following him. (Ex B 66, 67, 74 – 78).

17.     At the time of the incident on September 13, 2006, Dougherty and plaintiff did not know each other. (Ex. D, 32;  Ex. B, 66).

18.     At the time of the incident complained of, Dougherty was not familiar with Velocity Express. (Ex. D, 17, 25)

19.     At the time of the incident complained of, Dougherty had not seen plaintiff in the earlier company of Donley, and Dougherty did not know that plaintiff was a deliveryman. (Ex. B, 71; Ex. D, 50)

20.     Dougherty did not know plaintiff's purpose for being in the building and plaintiff refused to tell him. (Ex. B, 77 – 78; Ex. D, 28 – 29, 34, 38 – 39)

21.     When plaintiff refused to stop and tell Dougherty his purpose for being in the building, Dougherty used his walkie-talkie to call for assistance. (Ex. B, 67, 73 – 77; Ex. D, 28 – 29).

22.     Plaintiff heard Dougherty use his walkie-talkie to call for assistance, and yet plaintiff continued to walk through the building and did not stop and explain his purpose to Dougherty. (B, 73 - 74)

23.     School police officers responded to Dougherty's request for assistance. (Ex. B, 76; Ex. D, 33 – 34).

4

Case 2:08-cv-04375-MSG   Document 19   Filed 10/02/09   Page 7 of 30


24.     One of the school police officers asked plaintiff to identify himself, and to state his purpose for being in the building. (Ex. B, 76, 79; Ex. D, 39)

25.     School Police Officer Sergeant Samuel Dumond ("Dumond") responded to Dougherty's request for assistance and asked plaintiff who he was and what he was doing there; plaintiff responded "F you." (June 18, 2009 Deposition Testimony of Samuel Dumond[6], p. 15, 19 – 20.)

26.     Non-teaching assistant Thomas Craig ("Craig") was present in the hallway at the time of the incident complained of. Craig testified that plaintiff was saying in a raised voice to Dougherty, Dumond and others, "I ain't got to fucking tell you nothing. I ain't – you ain't nothing to me. I'm doing what I'm doing…." (June 1, 2009 Deposition Testimony of Thomas Craig[7], p. 15 - 16.)

27.     Craig testified that plaintiff was being asked to state his name and his purpose, and plaintiff, "was saying, I'm just not fucking telling yous nothing. You're just picking on me because I'm black." (ex. F, 16)

28.     Craig testified that plaintiff refused to comply with the directives he was given, and that he was told he would be placed under arrest. "And his response was, "You ain't fucking arresting me, you ain't touching me…..We tried to diffuse him as best as possible, and the man was just highly agitated and out of control at that point in my estimation." (Ex. F, 18).

---

[6] A true copy of the identified portions of Samuel Dumond's June 18, 2009 Deposition Transcript is attached to Defendants' Motion for Summary Judgment as Exhibit E.

[7] A true copy of the identified portions of Thomas Craig's June 1, 2009 Deposition Transcript is attached to Defendants' Motion for Summary Judgment as Exhibit F.

29.     Plaintiff admits that *at no time* before he was placed under arrest and placed in handcuffs did he ever tell Dougherty or the school police his name or what he was doing in the building, other than to state he was "working." (Ex. B, 76 – 80).

30.     Dougherty told plaintiff that if he continued to refuse to identify himself or state his purpose, he would be arrested for trespassing, but plaintiff admittedly continued to refuse to provide this information. (Ex. D, 44; Ex. B, 79 – 80; Ex. F, 18)

31.     When plaintiff was asked his name, he stated that his "ID was in my truck." (Ex. B, 87). In fact, plaintiff never told the school personnel his name, and when he was arrested by the Philadelphia Police Department, he refused to tell the arresting officer his name; he was identified as "John Doe." (Ex. B, 92 – 93).

32.     Plaintiff admits that when asked, he refused to explain the nature of the work he was doing that day:

> Q.     But the walking with the principal and all was earlier. At the moment you had this meeting in the hallway between Mr. Dougherty and the two officers, did you tell them, I'm here on – I'm making a pickup from the office of boxes that you're returning?
>
> A.     No, ma'am. It got – I'll tell you, with the quickening of his (Dougherty's) pace and everybody coming at me, it was just chaotic. I was working. I wasn't doing anything. I wasn't talking with anyone. I wasn't walking with anyone. I had my dolly, and I was heading back to get my boxes.
>
> **Q.     Did you mind their asking what you were doing there?**
>
> **A.     The way they asked me, yes, ma'am.**

(Ex. B, 77 – 78).

6

33.    Plaintiff offered the following explanation for his admitted refusal to identify himself and tell Dougherty why he was at the school:

**Q.    Did they – did you ever tell them at any point before handcuffs were put on you, I'm here to make a delivery, I'm here to pick up items?**

**A.    I did not tell them that.**

Q.    And what was your reasoning for not telling them that?

A.    Again, when he came running down the hall and I realized he was coming after me, I didn't know what he was coming after me about. He didn't identify himself, and I had just talked to the principal. So I was trying to get my job finished. (Ex. B, 79 – 80)

34.    Plaintiff admits that Donley and Dougherty did not physically touch him on September 13, 2006. (Ex. B, 132).

35.    Plaintiff admits that the two school police officers who approached him were in uniform. (Ex. B, 67).

36.    Plaintiff admits that before he was placed in handcuffs, he "pushed back off" the uniformed school police officers in a dispute over his hand dolly. (Ex. B, 69)

37.    Plaintiff was taken to the police station by the Philadelphia Police, where he was detained for one hour and then released at approximately 11:00 a.m. (Ex. B, 96, 97).

38.    No criminal charges were filed against the plaintiff. (Ex. A, ¶ 21; Ex. B, 96).

39.    Plaintiff walked home from the police station. (Ex. B, 98).

40.     Plaintiff saw an attorney, then went to seek medical assistance. (Ex. 102 –

103).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOE HILLARD | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 08-cv-4375 |
| SCHOOL DISTRICT OF PHILADELPHIA, : | | |
| DR. DONALD DONLEY, PRINCIPAL, | | |
| AND VICE PRINCIPAL TOM DOUGHERTY | | |
| Defendants | : | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**FOR SUMMARY JUDGMENT**

---

## I.  INTRODUCTION

Plaintiff Joe Hilliard brings suit against the School District of Philadelphia (the "School District"), Donald C. Donley, Principal of Lincoln High School ("Donley"), and Tom Dougherty, Vice Principal of Lincoln High School ("Dougherty")[1] for alleged violation of his rights guaranteed by the United States Constitution as the result of an incident that took place on September 13, 2006. Specifically, Plaintiff claims that Donley and Dougherty (1) falsely arrested and imprisoned him; used excessive force against him; conspired to harm Plaintiff and stood by while excessive force was used against Plaintiff;

---

[1]       The Complaint, filed on September 11, 2008 (two days before the expiration of the two-year statute of limitations), also names as defendants "School Police Officers John Doe # 1 – 7." However, plaintiff never amended the Complaint to replace the name "John Doe" with the parties' real names as required by Federal Rule of Civil Procedure 15. No school police officers have been served with the Complaint, and no appearance has been entered on their behalf. As the Third Circuit stated in *Krenzel v. SEPTA*, 91 Fed. Appx. 199, 202, n4 (3d Cir. 2004): "Krenzel also named a John Doe defendant but he never sought to replace him with the name of an actual SEPTA employee. We therefore will not address any claims made against the John Doe defendant."

(2) committed state law torts (Counts I through VII of the Complaint), and (3) that the

School District violated his constitutional rights (Count VII of the Complaint). Viewing

the evidence in the light most favorable to the Plaintiff, the record is insufficient to allow

a reasonable jury to find that Plaintiff's constitutional rights were violated. Moreover, the

doctrine of qualified immunity shields Donley and Dougherty from liability. Further,

Plaintiff has failed to adduce sufficient evidence to meet his burden of proof against the

School District under the requirements of municipal liability enunciated by the Supreme

Court in *Monell, infra.* Finally, the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §

8541 *et seq.* bars Plaintiff's state law tort claims in their entirety.  For these reasons and

those set forth more fully herein, summary judgment should be granted in favor of

Defendants.

## II.     STATEMENT OF UNDISPUTED FACTS

Defendants' Statement of Undisputed Facts, in numbered paragraph form, with

citation to the record, is attached hereto.

In brief summary of the material facts not in dispute, Plaintiff Joe Hilliard, aged

36 at the time, was an independent contractor for an entity known as Velocity Express,

delivering office supplies to Abraham Lincoln High School on September 13, 2006. He

arrived at the school at approximately 9:00 AM. Other than a black polo-type shirt with

the words "Velocity" and "Time Critical Logistics" above the chest pocket, he was not

wearing a uniform that would be associated with a known delivery service, such as, for

example, United Parcel Service or FedEx. Plaintiff was walking in the hallway of the

high school in order to retrieve a hand dolly which he had forgotten in the loading dock

area in the rear of the school. Plaintiff was complying with a request by Principal Donley

2

to remove boxes from the school office which were being returned to the vendor. Plaintiff was aware that school was in session and that students were in their classrooms.

Vice Principal Dougherty, who has been employed by the School District for thirty-four years, was responsible to oversee security inside the school. He was unaware that Principal Donley had asked Plaintiff to remove the boxes. Dougherty did not know Plaintiff, and when Dougherty saw Plaintiff walking through the building, he did not know Plaintiff was a deliveryman. Dougherty was not familiar with the entity known as "Velocity." Plaintiff was not wearing a yellow visitor's badge. According to Plaintiff, Dougherty, who was wearing a suit and tie and carrying a walkie-talkie, called out to Plaintiff, "Hey, how are you doing? Can I help you?" Plaintiff admits that he replied that he "did not need any help," and that he kept walking through the school corridors. Dougherty followed Plaintiff and asked what he was doing in the building. Plaintiff was well aware that Dougherty was following him, but Plaintiff continued walking. Plaintiff heard Dougherty call for back-up on his walkie-talkie, but Plaintiff did not stop.

Plaintiff retrieved his hand dolly and continued back down the corridor where he came upon Dougherty and two uniformed School Police Officers. Plaintiff was again asked to state his name and what he was doing in the building, but Plaintiff did not like the tone the officers used. According to Plaintiff's deposition testimony, when he was asked what he was doing, he answered, "I am working." He did not explain the nature of his work, or that he was there to pick up boxes. Plaintiff testified that he engaged in some pushing and shoving with an officer over his hand dolly. Plaintiff admits that he replied, "My ID is in the truck," when he was asked to state his name. Dougherty testified that he told plaintiff it was possible he would be arrested for trespassing if he continued to refuse

3

to state his name or his purpose for being in the school building. Plaintiff admitted at his

deposition that at no time before he was placed under arrest by the School Police Officers

did he tell them his name or state what he was doing in the building. Plaintiff was placed

in handcuffs by two officers. Dougherty and other witnesses testified that Plaintiff was

irate, used profanity, accused the school personnel of picking on him because he is black,

and resisted being placed in handcuffs. Plaintiff admits that he would not even identify

himself to the Philadelphia Police Officer who came to arrest him at the school.

After being taken to the police station, Plaintiff was detained for about one hour

after which time he was released shortly before 11:00 AM. No criminal charges were

filed against him. He walked home to his house from the police station. He testified that

his companion located an attorney in the phone book, and that after he went to see the

attorney, he sought medical attention later that evening. Plaintiff claims he was injured by

the School Police when he was placed in handcuffs. Plaintiff has no knowledge that

Dougherty touched him at any time, and he further testified that he never saw Donley

after Donley had asked him to remove the boxes from the office, well before the arrest

took place.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material face and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted

only if the moving party persuades the district court that "there exists no genuine issue of

material fact that would permit a reasonable jury to find for the moving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

In determining a motion for summary judgment, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## IV.   ARGUMENT

### A.   INDIVIDUAL DEFENDANTS DONLEY AND DOUGHERTY ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S §1983 CLAIMS

All civil rights claims against Donley and Dougherty must be dismissed because they are protected by the doctrine of qualified immunity. The Supreme Court recently stated: "The doctrine of qualified immunity "balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, __U.S.__, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). The doctrine immunizes government officials from liability and from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

"[T]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)) (quotation marks and citation omitted).

A government official is entitled to qualified immunity depending on two considerations: whether the plaintiff has alleged that the defendant violated a constitutional right, and "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Curley v. Klem*, 499 F.3d 199, 206-07 (3rd Cir. 2007). (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). In *Pearson*, the Supreme Court held "that the *Saucier* procedure should not be regarded as an inflexible requirement," and that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 813, 818.

In the present case, Plaintiff does not establish that Donley and Dougherty violated any constitutional right. In order to make out a prima facie case under Section 1983, a plaintiff must show that a person acting under color of law deprived him of a federal right. *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). There is no such evidence in this matter.

There is no evidence whatsoever that Donley had any involvement with the arrest and detention of Plaintiff. According to Plaintiff's own deposition testimony, Principal

6

Donley had no involvement with Plaintiff after Plaintiff agreed to remove the boxes from the main office. Plaintiff never saw Donley again. As Plaintiff testified at his deposition, at no time did Mr. Donley physically put his hands on Plaintiff or detain Plaintiff in any way. Donley did not even know that Plaintiff was detained by the School Police until later in the day when he inquired about the boxes still in the office. The undisputed facts do not establish any claim against Donley for excessive force, false arrest, false imprisonment, or any other alleged cause of action, and all claims against him should be dismissed as a matter of law.

With respect to Dougherty, the evidence establishes that after Plaintiff refused to stop and explain what he was doing in the school building, Dougherty called for assistance from the School Police Officers. It is undisputed that at no time did Dougherty touch Plaintiff, or place him under arrest.

There is no respondeat superior liability for claims arising under §1983. Neither Donley nor Dougherty can be held responsible for any conduct on the part of others. It is well-settled that [a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The Third Circuit recently addressed this issue in *Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186 (3rd Cir. 2009), stating: "In light of the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding Bahl liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983. See *id.*, 129 S. Ct. at 1949, 173 L. Ed. at

7

883 ("In a § 1983 suit or a Bivens action--where masters do not answer for the torts of
their servants--the term 'supervisory liability' is a misnomer. Absent vicarious liability,
each Government official, his or her title notwithstanding, is only liable for his or her
own misconduct. In the context of determining whether there is a violation of clearly
established right to overcome qualified immunity, purpose rather than knowledge is
required to impose Bivens liability on the subordinate for unconstitutional discrimination;
the same holds true for an official charged with violations arising from his or her
superintendent responsibilities.").".

In the present case, Plaintiff's evidence, when viewed in the light most favorable
to Plaintiff, merely established that Dougherty asked Plaintiff to identify himself and to
state his purpose for being in the school building. When Plaintiff refused to stop and
answer the questions, Dougherty called for assistance from the School Police. Once the
School Police officers arrived at the scene, Plaintiff does not point to any further conduct
by Dougherty, other than the fact that he was present in the hallway. Instead, the evidence
shows that Plaintiff objected to being questioned by the School Police, and got into a
shoving match with one of the officers over his hand dolly. The School Police officers
placed the handcuffs on Plaintiff and took him to the security office where he remained
until the Philadelphia Police arrived.

As Vice Principal of a large high school, charged with the responsibility to
oversee security of the students and school personnel within the building, Dougherty was
not violating any known right of Plaintiff when he asked Plaintiff what his name was and
to state why he was in the building. When by his own admission Plaintiff essentially
ignored Dougherty, refused to stop and explain his purpose for being in the building, and

8

merely offered the cryptic "I am working," as he continued walking through the building,
Dougherty was certainly acting properly when he summoned the assistance of the School
Police, who are charged, by statute, with maintaining order within the building. Under 24
P.S. § 7-778(c)(1), a school police officer is obligated to "enforce good order in school
buildings . . . and on school grounds." Further, the school police are authorized to detain
a potential wrongdoer until law enforcement can become involved. 24 P.S. § 7-778
(c)(3). See *Cherry v. Garner*, 2004 U.S. Dist. LEXIS 26060 (E.D. Pa.), and *Johnson v
School District* et al, 2008 U.S. Dist. LEXIS 63958 (E.D. 2008).

Both *Cherry* and *Johnson* are instructive in analyzing the issues presented. In
*Cherry*, an action was brought against School Police Officer Garner. Garner and the adult
plaintiff Cherry were involved in an altercation on school property. Garner detained
plaintiff, told her she was under arrest for disorderly conduct, and summoned the
Philadelphia police who ultimately arrested her. Garner claimed she suffered injury when
Garner used force to detain her. Following a criminal trial Cherry was found not guilty,
and she brought the civil action against Garner alleging that Garner was liable under
Section 1983 for, *inter alia*, false arrest, false imprisonment and excessive force. Garner
asserted his qualified immunity, and further argued that his conduct did not "shock the
conscience" as required to establish liability under Section 1983.

*Johnson* also involved an altercation between an adult, Pamela Johnson, and
School Police Officer Hazzard. Hazzard placed Johnson in handcuffs after a series of
physical confrontations; Johnson was arrested by the Philadelphia police and charged
with aggravated assault, but the charges were ultimately discharged for lack of
prosecution. Johnson alleged in her civil action that Hazzard was liable under Section

9

1983 for, *inter alia*, excessive force and false arrest. Hazzard asserted his qualified immunity.

The Courts in *Cherry* and *Johnson* thoroughly analyzed the issues and the applicable legal standards. Even though defendants Dougherty and Donley are not school police officers, they are alleged to have been acting under color of state law and to have violated the rights of Plaintiff under 42 U.S.C. §1983, and the same rationale applies on the question of qualified immunity. In *Cherry*, the Court correctly stated, "Qualified immunity will only be lost if the facts available to the officer are 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Cherry*, p. 26. The Court found that plaintiff Cherry "did not have a clearly established right not to be detained as a result of the altercation," and thus Garner was entitled to qualified immunity. *Id*. at 28 – 29. The Court based its analysis on plaintiff's admitted aggressive and vulgar reaction to Garner on the day of the altercation, and Garner's obligation to enforce order in school buildings. *Id*.

In *Johnson*, the Court similarly found that defendant Hazzard was entitled to qualified immunity on the false arrest allegation because, *inter alia*, "...Johnson was yelling and screaming at the officers. In addition, at the time of the incident, students were leaving their classes and filling the hallway. Under these circumstances, and given a school police officer's obligation to enforce good order and promote safety on school grounds, a reasonable officer could have concluded that it was lawful to detain Ms. Johnson until the Philadelphia police officers made the determination whether or not to arrest her. Thus, summary judgment is appropriate on Ms. Johnson's false arrest charge against Officer Hazzard." *Johnson,* at p. 22.

Thus, under the reasonableness standard enunciated by the Supreme Court in *Pearson, supra*, and as applied by the courts in this Circuit as in *Curley v. Klem, supra,* the inquiry in deciding the question of whether Donley and Dougherty are entitled to qualified immunity is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' *Id.* In both *Cherry* and *Johnson,* the courts found that the conduct of school personnel was reasonable because of their duty to maintain order and safety inside the school when they were confronted with adults on school grounds who engaged in altercations with them. Plaintiff in the present case refused a reasonable request to tell the Vice Principal of the school his name and what he was doing in the building. It is stating the obvious to observe that if Plaintiff had simply complied with the reasonable request, there would have been no need for Dougherty to have called for the assistance of the school police in the first place.

Neither Dougherty nor Donley actually detained Plaintiff, because the school police officers had that responsibility and in fact exercised it on the date of the incident. Dougherty merely called for assistance from the School Police, after Plaintiff refused to stop and explain his purpose for being in the building. However, to the extent that Plaintiff is asserting that either Dougherty and/or Donley committed "false arrest or imprisonment," it may be necessary to address the issue of "probable cause." As the Court observed in *Cherry* at 33 – 34, even though the question of probable cause in a §1983 action is usually a question of fact, the application of qualified immunity is a question of law. This "tension" has been addressed by the Third Circuit Court of Appeals, which had held that the court may conclude that probable cause existed as a matter of law if the evidence, viewed in the light most favorable to plaintiff, "reasonably would not

11

support a contrary factual finding." See *Sherwood v Mulvihill*, 113 F.3d 396, 401 (3rd Cir. 1997).

In resolving the issue of probable cause, it is important to note that "the proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

*Feldman v. Community College of Allegheny*, 85 Fed. Appx. 821 (3rd Cir. 2004) is helpful on this point. Plaintiff Feldman, a student at the community college, had an on-going dispute with the computer lab instructor over his right to use the computer lab. The dispute culminated in his forcible removal from the computer lab and his arrest for trespass, charges that were later withdrawn. Feldman brought Section 1983 claims against the arresting officers. The court upheld the grant of summary judgment in favor of the arresting officers stating:

> "Feldman's assertion that the officers should have investigated his status as a student and his claim that he had a right to use the lab is incorrect. Under *Merkle v. Upper Dublin School District*, an officer is not required to "undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists." 211 F.3d 782, 790 n. 8 (E. D. Pa. 1999) (stating that an arresting officer was reasonable in believing a credible report from a school principal who witnessed an alleged theft of school property by a teacher).
>
> We agree with the District Court that, regardless of the ultimate disposition of the criminal charges, there was clearly probable cause under all of the circumstances

for the officers to believe that Feldman was trespassing. "There is no question that the police officers were not required or permitted to conduct a trial of the matter on the spot to determine whose interpretation of [the College's] policies was correct, and that there was ample probable cause to arrest this defiant trespasser who refused to obey repeated requests by the owner's agents to leave." Dist. Ct. Op. at 18-19. We, therefore, agree with the District Court's grant of summary judgment in favor of the officers and the City of Pittsburgh on this issue.

*Feldman*, at 825 – 826.

Thus, Dougherty was not required to "undertake an exhaustive investigation" or "conduct a trial of the matter on the spot" to figure out what Plaintiff meant when he said he was "working" in response to requests that he identify himself. It was not unreasonable for Dougherty to assume, based on Plaintiff's behavior, that he may have been trespassing, and that the assistance of the School Police was advisable.

For all of these reasons, Count I alleging False Arrest and Illegal Seizure should be dismissed.

## B.     THE CONDUCT OF DONLEY AND DOUGHERTY DOES NOT SHOCK THE CONSCIENCE

The Third Circuit applies the Fourteenth Amendment's "shocks the conscience standard" to federal claims alleging the use of excessive force by public school officials. *Gottlieb v Laurel Highlands School District*, 272 F.3d 168, 172 (3rd Cir. 2001); *Cherry v Gardner, supra.* The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Gottlieb*, 272 F.3d at 173. Only state conduct that is

13

"arbitrary or conscience shocking, in a constitutional sense" rises to this level. *County of Sacramento v Lewis,* 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998).

Adopting the test developed by the United States Court of Appeals for the Fourth Circuit in *Hall v Tawney,* 621 F.2d 607 (4th cir. 1980), the Third Circuit has directed courts to consider the following four elements in applying the shocks the conscience test to the use of excessive force by school employees:

1)    Was there a pedagogical justification for the use of force?

2)    Was the force utilized excessive to meet the legitimate objectives of the situation?

3)    Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm? And

4) Was there a serious injury?

Id.

The primary inquiry required by the Third Circuit is "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Gottlieb, 272 F.3d at 173. Applying the *Gottlieb* test to the conduct of Dougherty and Donley on September 13, 2006, it is obvious that nothing they did even remotely rises to this level of culpable conduct. Neither individual even touched the Plaintiff. Dougherty merely called for assistance from the School Police when Plaintiff refused to stop and identify himself.

In the absence of any evidence whatsoever that Dougherty and/or Donley ever touched plaintiff, there is no evidence to support a claim for excessive force against them, and Count II should therefore be dismissed.

There is no evidence to support a conspiracy claim against Dougherty and/or Donley, and Count III should also be dismissed. In order to state a claim for conspiracy under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" *Norcross v Town of Hammonton*, 2007 U.S. Dist. LEXIS 52147 (3rd Cir. 2007) (citing *Parkway Garage, Inc. v City of Philadelphia*, 5 F.3d 685, 700 (3rd Cir. 1993). A conspiracy claim is not actionable under Section 1983 unless plaintiff can establish both an agreement and an actual deprivation of a constitutional right. *Id.*

In stating a claim for conspiracy, plaintiff must not make "bare conclusory allegations of 'conspiracy' or 'concerted action,'" but are required to "expressly allege an agreement or make averments of communication, consultation, cooperation or command from which such an agreement can be inferred." *Flanagan v Shively*, 783 F. Supp. 922,928 (M.D.Pa.), aff'd 980 F.2d 722 (3rd Cir. 1992), cert denied, 510 U.S. 829, 126 L.Ed.2d 62, 114 S.Ct. 95 (1993). Such averments "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives." *Id.*

In this case, Plaintiff is unable to meet any of the above elements to establish a claim of conspiracy. The record is devoid of any evidence establishing a mutual understanding, plot, plan or agreement between the officers involved in plaintiff's arrest. Count III should therefore be dismissed.

15

The claim for "bystander liability" alleged in Count IV must be dismissed as well, as the doctrine applies to police officers in certain limited circumstances, and not to civilians such as Dougherty and/or Donley. See *Smith v Mensinger*, 293 F.3d 641 (3rd Cir. 2002). Its continued validity is questionable in light of the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), as discussed above. In any event, there is no evidence that Dougherty and/or Donley had the opportunity to intervene at the time of the arrest.

## C.   THE STATE LAW TORT CLAIMS SHOULD BE DISMISSED

Counts V, VI and VII appear to allege, respectively, state law tort claims of infliction of emotional distress, false imprisonment and assault and battery against Donley and Dougherty. These claims are barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8541 *et seq.* ("the Tort Claims Act.")

The School District of Philadelphia is a local agency whose liability in personal injury claims is limited by the Tort Claims Act, which provides a general grant of immunity except in certain limited situations not applicable here. 42 Pa.C.S.A. § 8541. Employees of the School District are entitled to the same immunities as their employer. 42 Pa.C.S.A. § 8545.

Employees can be liable for certain intentional torts if it is judicially determined their conduct constitutes "a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S.A. § 8550. Willful misconduct means that the individual employee committed an intentional tort subjectively knowing that his or her conduct was wrong. *Renk v Pittsburgh*, 537 Pa. 68, 77, 641 A.2d 289 (Pa. 1994). Here, as set forth fully above, the record is devoid of any evidence to establish that Donley and/or Dougherty acted with the

16

requisite malice or intent required to strip them of their immunity under the Tort Claims Act.

In *Renk, supra*, a police officer was entitled to indemnification because a jury verdict against him for false arrest and assault and battery, even with an award of punitive damages, did not establish willful misconduct under the Tort Claims Act. Applying the decisions interpreting Section 8550 of the Tort Claims Act to this case, it is clear that no reasonable jury could find willful misconduct on the part of Donley and/or Dougherty. Counts V, VI and VII should therefore be dismissed.

### D.   PLAINTIFF HAS FAILED TO ADDUCE COMPETENT EVIDENCE SUFFICIENT TO SUPPORT A SECTION 1983 CLAIM AGAINST THE SCHOOL DISTRICT OF PHILADELPHIA

In Count VII, plaintiff alleges a claim against the School District under 42 U.S.C.§ 1983. However, this claim must also be dismissed.

The Supreme Court has instructed that "proper analysis requires us to separate two different issues when a §1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2), if so, whether city is responsible for that violation. *Collins v City of Harker Heights*, 503 U.S. 115, 120 (1992) (citing *Oklahoma City v Tuttle*, 471 U.S. 808, 817 (1985) ). As noted for all the reasons set forth above, Plaintiff has not established a cognizable constitutional claim in this matter. This of course is fatal to his municipal liability claim against the School District.

However, even assuming a constitutional violation, Plaintiff can only sustain a §1983 claim against the School District of Philadelphia if he can satisfy the standards established by the Supreme Curt in *Monell v New York Cty Department of Social Services,* 436 U.S. 658 (1978) and its progeny. As the Supreme court held in *Monell*,

*supra*, a municipality will not be held liable on the basis of *respondeat superior*. A municipality will only be held liable where there is evidence establishing that the alleged constitutional violation was the result of a municipal policy, custom or practice. *Monell*, supra. Plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v Harris*, 489 U.S. 378, 385 (1989). The Supreme Court has instructed that municipal liability will attach under §1983 only where a policymaker was deliberately indifferent to the plight of citizens, evidenced by "a deliberate choice to follow a course of action...made from among various alternatives." *Pembaur v City of Cincinnati,* 475 U.S. 468, 483 (1986). Proof of a single incident is insufficient to establish municipal liability. *Oklahoma City v Tuttle*, 471 U.S. 808, 817 (1985).

Here, Plaintiff has not adduced any evidence of a "policy, custom or practice" that led to the alleged constitutional violation at issue in this case. There is no evidence of any prior complaint against Donley, Dougherty or even any of the unnamed school police officers. Plaintiff has failed to identify a policy-maker or produce scienter-like evidence. *Beswick v City of Philadelphia*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001). Under *Monell*, Plaintiff has failed to state a claim against the School District. Count VII should therefore be dismissed.

## V.    CONCLUSION

The only defendants in this action are the School District, Donley and Dougherty. The evidence fails to support a claim against these parties. On the contrary, with respect to these defendants, the evidence is either non-existent or affirmatively establishes the reasonableness of their behavior. The entire incident would have been avoided if Plaintiff

had complied with the reasonable requests to state his name and purpose for being in the school. In this day and age, with incidents of school violence in the news, and with school officials charged with the responsibility to assure the safety of students and school personnel, Vice Principal Dougherty was hardly committing a constitutional violation when he asked Plaintiff what his name was, and what he was doing in the building. Plaintiff acknowledges that he continued on about his business in the school, never taking a moment to stop and answer the Vice Principal's questions. This behavior raised legitimate questions in the mind of Mr. Dougherty, who took appropriate actions in calling for help. Unfortunately, the situation escalated when Plaintiff continued to avoid answering direct questions about his purpose in the school. The ensuing events, however, were not caused by Dougherty, Donley or by any policy, custom or practice of the School District. Plaintiff's Complaint must therefore be dismissed.

Respectfully submitted,

Diane Bernoff Sher

Date:    October 2, 2009

## CERTIFICATE OF SERVICE

I hereby certify that the attached Motion for Summary Judgment with supporting

Memorandum of Law and Proposed Order filed on behalf of the Defendants School

District of Philadelphia, Donald Donley and Tom Dougherty have been filed

electronically on the below date and is available for viewing and downloading from the

ECF system. The below counsel are registered to receive notice via electronic notification

in this case:

Nusrat J. Rashid, Esquire
123 S. Broad Street, Suite 1100
Philadelphia, PA 19105
nrashid@lkhlaw.com
***Attorney for Plaintiff***

Diane Bernoff Sher
Assistant General Counsel

Date:   October 2, 2009